**PNEUMO ABEX CORPORATION, et al., Plaintiffs,**

**v.**

**BESSEMER AND LAKE ERIE RAILROAD COMPANY, INC., et al., Defendants.**

**Civil Action No. 2:94cv716.**

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 12, 1996.

James A. Gorry, III, Taylor & Walker, P.C., Norfolk, VA, Joseph G. Homsy, John W. Roberts, Lea D. Leadbeater, Albert J. Birkbeck, Zevnik Horton Guibord & McGovern, P.C., Chicago, IL for Pneumo Abex Corporation and Whitman Corporation.

Nancy Bennett Cherry, George Manuel Willson, City Attorney's Office, Portsmouth, VA, for City of Portsmouth, Virginia.

Joseph Price Massey, Susan Taylor Hansen, Katherine Susan Cross, Cooper, Spong & Davis, Portsmouth, VA, for Portsmouth Redevelopment and Housing Authority.

Michael Henry Wojcik, Weinberg & Stein, Norfolk, VA, Louis A. Naugle, James Mizgala, Reed Smith Shaw & McClay, Pittsburgh, PA, Jennifer Sarah Blank, Reed Smith Shaw & McClay, Washington, DC, for Bessemer and Lake Erie Railroad Company, Inc.

Thomas Scott McGraw, Faggert & Frieden, P.C., Chesapeake, VA, David Charles Bowen, Willcox & Savage, Norfolk, VA, Rodney B. Griffith, Consolidated Rail Corporation, Philadelphia, PA, for Consolidated Rail Corporation.

Robert H. Cox, Kevin A. Gaynor, George C. Hopkins, Vinson & Elkins, Washington, DC, for CSX Transportation, Inc., Fruit Growers Express Company, Inc.

Michael Dale Beverly, Joseph Marvin Spivey, III, Hunton & Williams, Richmond, VA, Frederick Blair Wimbish, Norfolk Southern Corporation, Law Department, Norfolk, VA, for Norfolk Southern Railway Co., Norfolk & Western Railway Co.

Mary Metil Grove, Christian, Barton, Epps, Brent and Chappell, Richmond, VA, Richard A. Porach, Pittsburgh, PA, for Pittsburgh & Lake Erie Railroad Company, Inc.

Channing Joseph Martin, William Rutherford Mauck, Jr., Heidi Abbott, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Richmond, Fredericksburg & Potomac Railroad Co., Inc.

Michael Henry Wojcik, Weinberg & Stein, Norfolk, VA, Louis A. Naugle, Reed Smith Shaw & McClay, Pittsburgh, PA, Jennifer Sarah Blank, Reed Smith Shaw & McClay, Pittsburgh, PA, for Union Railroad Company, Inc.

## MEMORANDUM OPINION AND ORDER

(Settlement Approval)

JACKSON, District Judge.

### INTRODUCTION

This matter comes before the Court upon Plaintiffs' motions for approval of settlements and dismissal and bar of claims. Plaintiffs initiated this action pursuant to sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9607, 9613 (1994), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994). Plaintiffs seek recovery of costs allegedly

incurred in responding to releases or threatened releases of hazardous substances at or from the Pneumo Abex Superfund Site ("Site") and a declaration that Defendants are jointly and severally liable for all future such costs. By order filed March 25, 1996, the Court held that the remaining Railroad Defendants, as denominated in that order, and Consolidated Rail Corporation were liable as generators under § 107(a) of CERCLA.

At the outset of the trial of this case to determine divisibility of harm and allocation of liability, Plaintiffs entered into settlement agreements with a number of Defendants. Plaintiffs now move the Court for dismissal of claims and bar of future claims as follows:

1) for Defendants American Premier Underwriters, Inc.; Bessemer and Lake Erie Railroad Company; Consolidated Rail Corporation; Florida East Coast Railway Company; Greenlease Holding Company; Lake Terminal Railroad Company; Richmond, Fredericksburg & Potomac Railroad Company; Trian Group, Limited Partnership; and Union Railroad Company, as well as Third-Party Defendant Wimco, Inc. by motion filed May 23, 1996,

2) for Defendants Holland Investment and Manufacturing Company, Inc.; John C. Holland, Jr.; and Runnymede Corporation by motion filed May 30, 1996, and

3) for Defendant Cambria & Indiana Railroad Company by motion filed May 30, 1996.

The Court collectively refers to Defendants that have entered into settlement agreements with Plaintiffs as "Settling Defendants." The Court refers to Defendants CSX Transportation, Inc., Fruit Growers Express Company, Inc., Norfolk Southern Railway Company, Norfolk & Western Railway Company, and High Point, Thomasville and Denton Railroad Company which remained in the case through the trial as "Remaining Defendants."

On June 7, 1996, Defendant Richmond, Fredericksburg & Potomac Railroad Company ("RF & P") filed a motion to "Modify Plaintiffs' Motion" which Defendants Bessemer and Lake Erie Railroad Company ("B & LE"), the Lake Terminal Railroad Company ("LTR"), and the Union Railroad Company, Inc. ("Union") joined and adopted on June 17, 1996. On June 24, 1996, Defendant Consolidated Rail Corporation ("Conrail") filed its opposition to one of RF & P's proposed modifications. On August 21, 1996, Plaintiffs filed a motion to join RF & P's request for modification of the proposed settlement agreement. As of this date, Remaining Defendants have not filed opposition to any of these motions.

The Court has reviewed the submissions of the parties and the relevant case law. This matter is now ripe for judicial determination.

## DISCUSSION

Regarding the dismissal and bar of claims, Plaintiffs move the Court for the following:

1. dismissal with prejudice of all claims, cross-claims, and counterclaims attributable to Operable Unit 1 ("OU1")[1] of the Site,

2. dismissal with prejudice of all claims, cross-claims, and counterclaims relating to future costs *for any operable unit of the Site other than OU1,* and

3. bar of all future claims *under CERCLA* seeking recovery of or contribution for any response costs attributable to OU1.

(*See, e.g.,* Pls.' May 23, 1996 Mot. at 2–3.) Plaintiffs also move the Court to enter an order specifying that the Uniform Contribution Among Tortfeasors Act ("UCATA")[2] will govern the effect of the releases of claims arising under sections 107(a) and 113(g)(2) of CERCLA and section 7002(a)(1)(B) of the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6972(a)(1)(B) (1988), as amended by the Resource Conservation

---

**1.** The Court uses the designation "Operable Unit 1" as defined in the Consent Decree entered in *United States v. Pneumo Abex Corp.,* Civ.A. No. 2:96cv27 (E.D.Va. filed Apr. 25, 1996).

**2.** Unif. Contribution Among Tortfeasors Act §§ 1–9, 12 U.L.A. 63–107 (1975).

and Recovery Act of 1976 ("RCRA"),[3] and that the Uniform Comparative Fault Act ("UCFA")[4] will govern the effect of the releases of claims for contribution arising under § 113(f) of CERCLA and § 7002(a)(1)(B) of the SWDA. (*See, e.g.*, Pls.' May 23, 1996 Mot. at 3–4.)

Defendant RF & P raises two concerns regarding the dismissal and bar of claims. First, RF & P requests that the Court not limit the bar of future claims to only those arising under CERCLA. RF & P argues that the parties, in entering in the settlement agreements, did not contemplate such a limitation. Also, RF & P requests that the Court add language to its order, barring all future claims, to exclude those "claims arising out of express contract." Defendants B & LE, LTR, and Union join RF & P in raising the concern over limiting the bar to claims arising under CERCLA; however, they join RF & P in the motion to add language concerning express contracts "only if the term 'express contract' is specifically designated *not* to include any of the Settlement Agreements between Plaintiffs and the Settling Defendants." (Joinder at 2.) Defendant Conrail opposes RF & P's proposed language to exclude claims arising out of express contract because that language "might exclude compulsory counterclaims that RF & P should have brought in the present action pursuant to Rule 13(a) of the Federal Rules of Civil Procedure." (Conrail Opp. at 1.)

### A. *The Limiting Language: "under CERCLA"*

■ An examination of the settlement agreements indicates that Plaintiffs agreed to move the Court for a dismissal of all future claims and did not limit the claims to those arising under CERCLA. However, Plaintiffs initiated this action under CERC-

LA and the Declaratory Judgment Act, not the SWDA, as amended by RCRA, or any other environmental law. Thus, the Court has only considered the liability of the parties under CERCLA. The Court recognizes, however, that the Consent Decree between Plaintiffs and the United States in *United States v. Pneumo Abex Corp.*, Civ.A. No. 2:96cv27 (E.D.Va. filed Apr. 25, 1996), includes a covenant by the United States not to sue Plaintiffs under § 7003 of the SWDA.[5] Despite the possible future application of RCRA or other environmental laws to the Site and the parties, the Court will only address those claims arising under CERCLA, the substantive statute of this action.

■ Furthermore, the Court has considered liability for only OU1, the area within a radius of 700 feet of Abex's former foundry and the focus of the Consent Decree. Plaintiffs, however, have moved for a dismissal of claims regarding any operable unit of the Site *other than OU1*. The Court declines Plaintiffs' invitation to address matters not squarely before it, and consequently this order will only affect OU1.

### B. *Claims Arising From Express Contract*

■ The Court now considers RF & P's request that the bar of claims exclude those arising from express contract. RF & P admits to having a contract regarding environmental liability with one of the Railroad Defendants. (RF & P's Mem. at 4.) The contract involves Potomac Yard, a former railyard now owned by RF & P, that one of the Railroad Defendants used. RF & P worries that a court could construe the language proposed by Plaintiffs as abrogating the contract. (*Id.*) Conrail objects to this language and asks that if the Court includes such language, it also include lan-

---

**3.** Section 7002(a)(1)(B) of the SWDA governs citizens' suits "against any person.... who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

**4.** Unif. Comp. Fault Act §§ 1–11, 12 U.L.A. 43–62 (Supp.1995).

**5.** Section 7003 of the SWDA provides for the United States to bring suit against any person whose "past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous may present an imminent and substantial endangerment to health or the environment."

guage that the bar would apply to such claims if they were compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. Rule 13(a) provides in relevant part as follows:

A pleading shall state as a counterclaim any claim which at the time of the serving of the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim....

FED.R.CIV.P. 13(a). Conrail does not, however, indicate to the Court the reason for its concern over the possible application of Rule 13(a).

As stated above, the Court will address only those claims which could arise out of this litigation under CERCLA. Accordingly, claims arising out of express contract are unaffected by this order. Furthermore, the purpose of this order is to establish the parties' rights and obligations in areas in which the law is silent or has left the matters to the Court's discretion. Whatever Conrail's concerns about compulsory counterclaims under Rule 13(a) may be, the Rule speaks for itself.

### C. *The Effect of the Releases*

■ Plaintiffs also move the Court to apply the UCATA to the releases of claims and to apply the UCFA to the releases of claims for contribution. Plaintiffs have not specified any sections of the uniform acts nor have they explicated the implications of their application in the instant case. Although the Court is uncertain of the remedy Plaintiffs seek, the Court will proceed to fashion a remedy which is most appropriate for the facts of this case and most likely to further the broad remedial goals of CERCLA.

Section 4 of the UCATA provides in relevant part as follows:

When a release ... is given in good faith to one of two or more persons liable in tort for the same injury ...

[i]t does not discharge any of the other tortfeasors from liability[,] ... but it reduces the claim against others to the extent of any amount stipulated by the release ... or in the amount of the consideration paid for it, whichever is the greater ... and,

[i]t discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

UNIF. CONTRIBUTION AMONG TORTFEASORS ACT § 4, 12 U.L.A. 98 (1975). Plaintiffs argue that the harm at the Site is indivisible. Thus, according to Plaintiffs, the Court should apply the principles of the UCATA because it is Plaintiffs' belief that Defendants are jointly and severally liable. Plaintiffs do not cite any cases in support of this position. Also, Plaintiffs have not thus far requested a hearing, which the Court's research indicates would be necessary under the UCATA, to determine whether the parties negotiated in good faith and whether the settlements are fair to Remaining Defendants. *Cf. Kovacs v. Ernst & Young (In re Jiffy Lube Sec. Litig.)*, 927 F.2d 155, 161 n. 3 (4th Cir.1991) ("This method exposes the non-settling defendant to liability for any deficiency in the judgment, so a hearing focussing on the fairness of the settlement to the non-settling defendant is required for approval."); *Atlantic Richfield Co. v. American Airlines, Inc.*, 836 F.Supp. 763, 775 ("The pro tanto rule does require special hearings to determine the fairness of settlements and decide if they are collusive or unfair as to amounts."). The Court notes that § 113(f)(2) of CERCLA which governs the effect of a settlement by a person with the United States or a state reflects the principles of the UCATA. *United States v. SCA Servs.*, 827 F.Supp. 526, 533 (N.D.Ind. 1993).

Section 6 of the UCFA provides in relevant part as follows:

A release ... entered into by a claimant and person liable discharges that person from all liability for contribution ... [and] the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

UNIF. COMP. FAULT ACT § 6, 12 U.L.A. 58 (Supp.1995). Section 113(f)(1) of CERCLA more closely resembles this act. *SCA Servs.*, 827 F.Supp. at 534. Many courts have deter-

mined that the principles of the UCFA are appropriate for settlement agreements among private parties in actions under CERCLA. *E.g., Hillsborough County v. A & E Road Oiling Serv., Inc.,* 853 F.Supp. 1402, 1409 (M.D.Fla.1994) (citing district court cases applying the UCFA). RF & P, in its previous opposition to the Plaintiffs' motion to grant protection from claims for contribution against settling Defendant USX Corporation, also asked the Court to apply § 6 of the UCFA rather than § 113(f)(2) of CERCLA, if it chose to grant protection from claims for contribution. (RF & P's Mot. in Opp. to USX's Settlement at 6–7.) The Court finds the reasoning of these courts persuasive and as it indicated in a previous order, adopts the principles of the UCFA.

The Court has ruled in another memorandum opinion and order in this case that although the harm at the Site is indivisible, there exists a reasonable basis for apportioning liability. Drawing upon the testimony of one of Plaintiffs' experts at trial and applying the principles of the UCFA, the Court finds that 19.9% of Defendants' Share, as defined in the Court's memorandum opinion and order of March 25, 1996, is attributable to Settling Defendants. Thus, Remaining Defendants are responsible for 80.1% of Defendants' Share.

#### D. *Dismissal of Settling Defendants*

RF & P, in its previous opposition to the Plaintiffs' motion to grant protection from claims for contribution against settling Defendant USX Corporation, also asked the Court not to dismiss the settling Defendants because the remaining Defendants would still need to establish the settlors' liability for any future costs. (RF & P's Mot. in Opp. to USX's Settlement at 8–9.) RF & P cited *Lyncott Corp. v. Chemical Waste Mgmt., Inc.,* 690 F.Supp. 1409, 1419 (E.D.Pa.1988), in which the district court held that the "defendants had a right to require ... [the third-party defendants] to remain in the case through trial and verdict in order to establish their joint tortfeasor status." RF & P, as a settlor, presumably no longer has this concern, and the Court has made this a moot issue by excusing Settling Defendants from the trial. However, the Court now notes for the record and for any possible objections by Remaining Defendants that Settling Defendants entered in these agreements with Plaintiffs long after the conclusion of discovery. Thus, Remaining Defendants had all the information available to determine a rough estimate of Settling Defendants' individual liability in any manner they thought appropriate. Given the nature of the harm at the Site, Remaining Defendants did not require the participation of Settling Defendants to adduce evidence at trial in an attempt to establish the relative liability of each Defendant. Also, a United States Magistrate Judge supervised most of the negotiations. This supervision favors a presumption of good faith and fair dealing. The Court further notes that Remaining Defendants voiced no objections at trial to the dismissal of Settling Defendants.

### CONCLUSION

Having considered the arguments of the parties, the Court hereby **ORDERS** the following:

1) the settlements between Settling Defendants and Plaintiffs are **APPROVED,**

2) regarding the response costs for OU1, all pending claims for contribution against any Settling Defendant are **DISMISSED** and all future claims for contribution against any Settling Defendant regarding Operable Unit 1 are **BARRED,**

3) the Court reduces the Defendants' Share by the proportional share attributable to Settling Defendants, 19.9% of Defendants' Share, according to the principles of the UCFA, and

4) RF & P's motion to "Modify Plaintiffs' Motion" (regarding the language in the proposed settlement agreement) in which Defendants Bessemer and Lake Erie Railroad Company, the Lake Terminal Railroad Company, Union Railroad Company, Inc., and Plaintiffs joined is **DENIED.**

5) Settling Defendants are **DISMISSED,** with prejudice, from the present action.

The Clerk is **DIRECTED** to send a copy of this order to counsel for Plaintiffs and counsel for Defendants.

It is so **ORDERED**.